**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

| | |
|---|---|
| Cortec Corporation, | Court File No.: 19-cv-00553-NEB-DTS |
| Plaintiff, | |
| vs. | **THIRD AMENDED COMPLAINT** |
| 572415 B.C. LTD d/b/a Innoplast Machinery, and Caco Plastics, Inc., | **(JURY TRIAL DEMANDED)** |
| Defendants. | |

_____

For its Complaint against 572415 B.C. LTD d/b/a Innoplast Machinery and Caco Plastics Inc., Plaintiff Cortec Corporation hereby states and alleges as follows:

## I. PARTIES

1. Plaintiff Cortec Corporation ("Cortec") is a corporation duly organized under the laws of the State of Minnesota, having its principal place of business in White Bear Lake, Minnesota.

2. 572415 B.C. LTD is, upon information and belief, a Canadian corporation residing in British Columbia, Canada, having its principal place of business at 6222 Boundary Drive East, Surrey, BC V3X 2C8, Canada and d/b/a Innoplast Machinery ("Innoplast"), a sole proprietorship organized under the laws of Canada, having its principal place of business at 17358, 104a Avenue Surrey, British Columbia, V4N5M3.

3. Caco Plastics, Inc. ("Caco"), upon information and belief, is a corporation duly organized under the laws of the State of Florida, having its principal place of business in Ocklawaha, Florida.

## II. <u>JURISDICTION AND VENUE</u>

4. This Court has diversity jurisdiction over this Complaint pursuant to 28 U.S.C. §1332(a)(1)&(2) and §1332(c)(1). The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c). Defendants are residents of this district and a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## III. <u>FACTUAL BACKGROUND</u>

6. Defendant Innoplast is a machine manufacturer. Defendant Caco acts as an independent sales representative and/or agent for Defendant Innoplast. For all relevant times and actions alleged herein, including the sale to Cortec of a machine manufactured by Defendant Innoplast, Defendant Caco was acting as an authorized representative and/or agent of Defendant Innoplast. (Hereinafter, Defendant Innoplast and Defendant Caco are referred to jointly as "Defendants".)

7. Defendants provided Cortec with a quote for Defendants' 50' Slitter Rewinder and Perforation Machine ("Perforator") on or about December 28, 2016. Such machine was to be manufactured by Defendant Innoplast.

8. Without limitation, Defendants represented and warranted that the Perforator would be capable of perforating paper to meet Cortec's requirement and needs. For example, Defendants represented and warranted that the Perforator would allow Cortec to meet its requirement of having perforation frequency (the distance between perforation) as low as 12 inch intervals. Defendants' quote expressly called for an "[a]djustable repeat from 12" to 999".

9. As another example, Defendants represented and warranted that the Perforator would allow Cortec to slit paper and re-roll it. Defendants' quote expressly called for "[o]ne Tidland rotary slitter knife to produce narrower width"

10. Defendants also represented and warranted that the Perforator could be delivered within 14-16 weeks following receipt of a purchase order.

11. In reliance on Defendants' representations and warranties, Cortec submitted a purchase order for the Perforator on or about December 29, 2016.

12. Defendants' delivery of the Perforator was significantly overdue and delayed. Specifically, the Perforator was not physically delivered until approximately nine (9) months later on or about September 27, 2017.

13. A representative from Defendant Innoplast traveled to Cortec on October 18, 2017 for training and initial start-up of the Perforator.

14. From the beginning, Defendants' Perforator failed to perform. Without limitation, the unit has been unable to perform its primary function of applying adequate or acceptable perforations to Cortec's products.

15. A representative from Defendant Innoplast returned to Cortec on or about November 27, 2017 to attempt to cure the defects. Cortec was initially told the problem was the result of a poor perforation blade. Accordingly, Defendant Innoplast's representative installed a new perforation blade and made various programming and performance adjustments to the machine.

16. The new perforation blade and adjustments failed to resolve or cure the defects and problems. The Perforator remained completely impaired and failed to perform its intended purpose or function. In addition to failing to apply proper or adequate perforation, Cortec was also unable to use the slitter to split rolls and continued to experience significant issues with the tensioner.

17. As a result, a representative from Defendant Innoplast returned to Cortec on or about March 21, 2018 to again attempt to cure the ongoing problems and defects with the Perforator. Defendant Innoplast's representative attempted various programming and performance adjustments but acknowledged such adjustments failed to cure the problems and defects. As a potential alternative cure, Defendant Innoplast's representative informed Cortec that a "bowed roll" would help address the problem and that such a "bowed roll" would be provided. No such "bowed roll" was ever furnished or provided.

18. In response to Cortec's ongoing complaints, Defendant Innoplast's representative returned to Cortec a fourth time on or about September 10, 2018 to yet again attempt to cure the ongoing problems and defects. Cortec was advised a new adjustable blade holder might cure the problems and defects. The adjustable blade holder

arrived at Cortec on or about November 25, 2018. Despite multiple follow-up requests by Cortec, its installation was significantly delayed.

19. Defendant Innoplast's representative finally returned on or about January 2, 2019. Such representative attempted to cure and remedy the ongoing problems and defects over a two day period. Without limitation, Defendant Innoplast's representative changed the Perforator's blade and attempted to make further modifications to the Perforator's settings. Such attempted repairs failed to solve the problems and defects.

20. Defendants' Perforator was significantly delayed and has never worked as represented or warranted. Despite multiple efforts by Defendants to cure such performance problems and defects, the Perforator has never performed as warranted and has never performed its primary function of applying proper perforations to Cortec's products.

21. In addition to not applying adequate or proper perforations at any perforation frequency, the Perforator has never been capable of applying any perforations at less than a 20 inch frequency. Moreover, the Perforator has never been capable of slitting paper in the manner represented and warranted by Defendants.

22. As a direct result of the Perforator's defects and failures to perform, Cortec has lost significant jobs and revenue. Without limitation, Cortec's customers have returned product due to faulty perforation.

23. Defendants' efforts to cure having failed, and Defendants' Perforator remaining completely or substantially impaired, Cortec was left with no choice but to

provide Defendants with formal notice of revocation of acceptance of the Perforator pursuant to Uniform Commercial Code §2-608 on or about January 29, 2019.

24. By way of express notice of revocation of acceptance dated January 29, 2019, Cortec demanded that Defendants provide a complete refund of the full purchase price paid by Cortec for the Perforator in the amount of $160,000.00.

## IV. CAUSES OF ACTION

### COUNT I
### Claim for Revocation of Acceptance, Cancellation of the Contract and Return of the Purchase Price

25. Cortec re-alleges the preceding paragraphs as though fully stated herein.

26. The Perforator has not performed in accordance with Defendants' obligation under the applicable agreements and contracts. As a result, the Perforator has failed to fulfill its intended purpose. As a result, the value of the Perforator to Cortec is substantially impaired.

27. Defendants have not reasonably and/or seasonably cured the problems and defects with the Perforator.

28. Cortec has taken reasonable care of the Perforator.

29. Cortec is entitled to cancellation of the original contract/agreements under which the Perforator was purchased and to return of the full $160,000.00 purchase price from Defendants. Cortec is further entitled to statutory interest on this amount.

### COUNT II
### Breach of the Implied Warranty of Merchantability

30. Cortec re-alleges the preceding paragraphs as though fully stated herein.

31. Defendants are merchants with respect to the Perforator. As a result, there arose an implied warranty of merchantability under Minn. Stat. §336.2-314.

32. The Perforator sold to Cortec by Defendants is not fit for the ordinary purposes for which it is used and is otherwise unacceptable under the contracts or

agreements of sale between the parties. Defendants have therefore breached the implied warranty of merchantability and damaged Cortec.

## COUNT III
### Breach of the Implied Warranty of Fitness for a Particular Purpose

33. Cortec re-alleges the preceding paragraphs as though fully stated herein.

34. At the time of the contracts or agreements of sale between Cortec and Defendants and at all times thereafter, Defendants were aware of Cortec's specific needs and the particular purpose for which Cortec required the Perforator.

35. Cortec relied on Defendants' skill and judgment when it promised and recommended that the Perforator would meet Cortec's needs. As a result, there arose an implied warranty that the Perforator would be fit for such purpose pursuant to Minn. Stat. §336.2-315.

36. Defendants' Perforator does not meet Cortec's specific needs nor is it fit for Cortec's particular purpose. Defendants have therefore breached the implied warranty of fitness for particular purpose and damaged Cortec.

## COUNT IV
### Breach of Express Warranty

37. Cortec re-alleges the preceding paragraphs as though fully stated herein.

38. Defendants made express representations and warranties concerning the performance and functionality of the Perforator.

39. When Cortec placed the order for the Perforator, it did so with the expectation that the Perforator would conform to the express representations and warranties made by Defendants. As such, Defendants' express representations and

8

warranties became the basis of the bargain between the parties. This created an express warranty that the purchased Perforator would conform to Defendants' representations and warranties pursuant to Minn. Stat. §336.2-313.

40. Defendants' Perforator sold to Cortec did not conform to Defendants' representations and warranties. Defendants have thus breached the express warranty and damaged Cortec.

## COUNT V
### Breach Of Contract

41. Cortec re-alleges the preceding paragraphs as though fully stated herein.

42. Defendants agreed, among other things, to provide a Perforator that conformed with Cortec's requirements, free from defects and flaws in material and workmanship.

43. Defendants further agreed to provide a Perforator which conformed to Defendants' express representations and warranties.

44. Defendants' breached the contract with Cortec by failing to provide a Perforator in conformity with Cortec's specifications or Defendants' express representations and warranties, failing to provide a Perforator free from defects and flaws in material and workmanship, and failing to repair or replace the defective Perforator. As a result of Defendants' breaches of contract, Cortec has suffered damages.

## COUNT VI
### Damages

45. Cortec re-alleges the preceding paragraphs as though fully stated herein.

46. Without limitation, Cortec has incurred direct, indirect, incidental and consequential damages as a direct result of Defendants' breaches.

47. Cortec is entitled to recover its damages caused by and resulting from Defendants' breaches.

## COUNT VII
### Unjust Enrichment

48. Cortec re-alleges the preceding paragraphs as though fully stated herein.

49. Defendants have been unjustly enriched by its improper conduct at the expense and to the detriment of Cortec.

## COUNT VIII
### Rescission and Restitution

50. Cortec re-alleges the preceding paragraphs as though fully stated herein.

51. Defendants' breach of contract is and/or was substantial and fundamental.

52. Cortec promptly notified Defendants of the breach.

53. Defendants have failed to acknowledge, remedy or cure such breaches.

54. Cortec is entitled to rescission of the sales contracts and to return of its full purchase price.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cortec prays for a judgment and decree in its favor against Defendants as follows:

1. For cancellation of the sales contracts and agreements between the parties.

2. For a return of the full purchase price of the Perforator.

3. Cortec's damages due to Defendants' breaches of warranty and breaches of contract under the Uniform Commercial Code and Defendants other unlawful acts under the common law, plus prejudgment interest.

4. Cortec's reasonable attorneys' fees, expenses and direct, indirect, incidental and consequential damages in an amount to be determined by the Court.

5. Such other and further relief as the Court deems proper.

Dated: September 30, 2019     **BRIGGS AND MORGAN, P.A.**

By: s/Michael M. Lafeber
   Gregory J. Stenmoe (#131155)
   Michael M. Lafeber (#242871)
   O. Joseph Balthazor Jr. (#0399093)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2157
(612) 977-8400

**ATTORNEYS FOR PLAINTIFF CORTEC CORPORATION**

12078078v1