# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| CORTEC CORPORATION, | Case No. 19-CV-553 (NEB/DTS) |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS |
| 572415 B.C. LTD d/b/a INNOPLAST MACHINERY, and CACO PLASTICS, INC., | |
| Defendants. | |

In this action, Plaintiff Cortec Corporation ("Cortec") asserts that machinery it purchased from the defendants was delivered late and never worked properly. Defendant Caco Plastics, Inc. ("Caco") filed this motion for judgment on the pleadings, arguing that the claims against it should be dismissed under a purported settlement agreement. Because Caco has not shown that Cortec settled all claims against Caco, the motion is denied.

## BACKGROUND

When considering a motion for judgment on the pleadings, the court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Corwin v. City of Indep.*, 829 F.3d 695, 699

(8th Cir. 2016) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). With this standard in mind, the Court recounts the facts alleged in this action:

Caco was the authorized representative or agent of defendant 572415 B.C. LTD, an entity doing business as Innoplast Machinery ("Innoplast"). [ECF No. 45 ("Third Amended Complaint" or "TAC") ¶¶ 2, 6.] Innoplast is a machine manufacturer, and among the machines it makes is a "Slitter Rewinder and Perforation Machine," known to the parties as the "Perforator." (*Id.* ¶ 7.) Caco sold machinery, including the Perforator, for Innoplast. (*See id.* ¶ 6.)

In December 2016, Plaintiff Cortec submitted a purchase order for the Perforator to Caco and Innoplast. (*See id*. ¶ 11.) Defendants represented that the Perforator would perform to certain specifications, and that it would be delivered within 14–16 weeks of ordering. (*Id*. ¶¶ 8–10.) Instead, delivery occurred approximately nine months later, in September 2017. (*Id.* ¶ 12.) In addition to the late delivery, Cortec had another problem: "From the beginning, Defendants' Perforator failed to perform." (*Id*. ¶ 14; *see id*. ¶ 20 (alleging the "Perforator was significantly delayed and has never worked as represented or warranted"); ¶ 21.) Representatives from Innoplast attempted to cure the ongoing problems and defects with the Perforator on multiple occasions, in 2017, 2018, and 2019. (*Id*. ¶¶ 15–19.) These attempts failed, and Cortec filed this lawsuit. Cortec's complaint alleges eight state law claims against both Defendants, including revocation, breach of warranty, and breach of contract. (*See id*. ¶¶ 25–54.)

Caco's Answer includes waiver, release, and accord and satisfaction among its affirmative defenses. [ECF No. 48 ¶¶ 53–55.] These defenses rely on a 2017 email exchange between representatives of Caco and Cortec, attached to the Answer as Exhibit A. [ECF No. 48-1.] The 2017 email exchange addresses the late delivery and functional problems of the Perforator. On November 30, 2017, Cortec's chief executive officer wrote that Cortec would not make its final payment on the Perforator, noting "[t]he experience with [*sic*] purchase of perforating machine . . . has been unsatisfactory. Delivery and installation has been delayed many times. It has been a full year since we opened a PO and the machine is still not running to our satisfaction." (*Id*. at 4.) Caco's representative responded that they "did deliver a good running machine . . . . William was there just yesterday and from what I am hearing that Brad said it was running well . . . . I do apologize for the very late delivery but did not want to deliver a machine that doesn't work." (*Id*. at 3.) On December 1, 2017, Cortec's CEO responded that he was "entitled to something for late delivery of this machine so make me a counter offer." (*Id*. at 2.) Caco's representative offered free freight delivery on the next two machines if Cortec would pay the balance owed on the Perforator. (*Id*.) Cortec's CEO replied, "You have yourself a deal." (*Id*. at 1.) This exchange forms the basis of Caco's motion.

**ANALYSIS**

**I.       Legal Standard**

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings at any point after the close of the pleadings, so long as it moves early enough to avoid a delay of trial. A motion for judgment on the pleadings is evaluated under the same standard as a motion brought under Rule 12(b)(6). *See Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In deciding the motion, the Court accepts as true the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Partridge v. City of Benton*, 929 F.3d 562, 564 (8th Cir. 2019). "Judgment on the pleadings 'should be granted only if the moving party has clearly demonstrated that no material issue of fact remains and the moving party is entitled to judgment as a matter of law.'" *Id.* at 564–65 (quoting *Whatley v. Canadian Pac. Ry. Ltd.*, 904 F.3d 614, 617–18 (8th Cir. 2018)).

**II.      2017 Email Exchange**

Caco's Rule 12(c) motion relies entirely on the 2017 email exchange attached to the Answer. The parties dispute whether this document can be considered by the Court without converting the motion to one of summary judgment. The Court must convert a Rule 12(c) motion to a motion for summary judgment under Rule 56 if it considers "matters outside the pleadings." Fed. R. Civ. P. 12(d). In ruling on a motion for judgment on the pleadings, the Court may consider the pleadings and exhibits attached thereto. *See*

Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (the court may properly consider the pleadings, certain matters of public record, and materials that are necessarily embraced by the pleadings, when considering a Rule 12(c) motion).

Courts in this Circuit have been "willing to consider exhibits attached to the answer under certain circumstances." *Transp. Drivers, Inc. v. Coca-Cola Refreshments USA, Inc.*, No. 16-CV-1074 (DWF/BRT), 2017 WL 1954772, at *8 (D. Minn. May 10, 2017) (citing *Sinclair Ref. Co. v. Stevens*, 123 F.2d 186, 188–89 (8th Cir. 1941)). For example, courts have considered contracts attached as exhibits to answers on motions for judgment on the pleadings. *See, e.g., id.* (on a Rule 12(c) motion, considering agreement attached as an exhibit to defendant's answer where plaintiff did not dispute the authenticity of the agreement); *Luther v. Am. Nat'l Bank of Minn.*, No. 13-CV-184 (LIB), 2013 WL 12073798, at *4 (D. Minn. Aug. 21, 2013) (stating that on a Rule 12(c) motion, the court "may review not only the complaint but also the answer and written instruments attached to the pleadings"). And at least one court outside of the Eighth Circuit has approved consideration of emails attached to pleadings on a 12(c) motion. *See, e.g., L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted) (noting the court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.").

Cortec does not dispute the authenticity of the 2017 email exchange, the text of the exchange, or that its CEO authored the emails attributed to him. Though it would not do so in every case, given the circumstances and the nature of this motion, the Court will consider the 2017 email exchange without converting the Rule 12(c) motion to a motion for summary judgment.

The heart of the dispute, then, is the meaning and consequence of the 2017 email exchange. The exchange does not include an express release of Cortec's claims against Caco. Nevertheless, Caco argues that it constitutes an agreement to settle Cortec's claims. Because a settlement agreement is a contract, the Court analyzes the issue under contract principles. *See Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581 (Minn. 2010). "[T]o constitute a full and enforceable settlement, there must be a definite offer and acceptance with a meeting of the minds on the essential terms of the agreement." *TNT Props., Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 100–01 (Minn. Ct. App. 2004). "If in dispute, the existence and terms of a contract are questions for the fact finder." *Morrisette v. Harrison Int'l Corp.*, 486 N.W.2d 424, 427 (Minn. 1992); *see Tornstrom v. Tornstrom*, 887 N.W.2d 680, 686 (Minn. Ct. App. 2016) ("Whether parties reach an objective meeting of the minds on the essential elements of a contract is a question of fact."). "The agreement necessary to form a contract need not be express, but may be implied from circumstances that clearly and unequivocally indicate the intention of the parties to enter into a contract." *Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp.*, 617 N.W.2d 67, 75 (Minn. 2000). "Whether a

contract has been formed depends on the parties' intent as evidenced by their objective conduct, not by their subjective intent." *Watkins Inc. v. Chilkoot Distrib., Inc.*, 655 F.3d 802, 805 (8th Cir. 2011) (citing *Cederstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 221 (Minn. 1962)). Thus, to prevail on its motion, Caco must show that there are no disputed material facts regarding (1) whether a contract was formed, and (2) the terms of that contract.

Caco contends that the 2017 exchange is a settlement contract because it includes an offer and acceptance. While there may be an offer and an acceptance contained in the exchange, its resemblance to a binding contract settling all claims ends there. The email exchange addresses Cortec's complaints about the late delivery *and* alleged defects with the Perforator, which led to Cortec's initial refusal to pay the final installment on the Perforator. [ECF No. 48-1 at 2–3.] While the parties appear to come to an agreement over the late delivery issue, a broader look at the exchange raises questions as to what rights, if any, Cortec released. For example, in the email exchange, Caco represented that the Perforator was working properly. (*See id*. at 3 ("William was there just yesterday and from what I am hearing that Brad said it was running well.").) Thereafter, Cortec responded that it was "entitled to something *for late delivery* of this machine." (*Id*. at 2 (emphasis added).) The Court agrees with Cortec that, at best, the 2017 exchange resolved the issue of late delivery, not Cortec's right to seek damages for any defects. Genuine issues of

material fact exist as to the meaning of the email exchange, precluding judgment on the pleadings.[1]

### III. Waiver of Claims under Minn. Stat. § 336.1-306

The Third Amended Complaint alleges that this dispute is governed by the Uniform Commercial Code. (*See, e.g.*, TAC ¶ 23.) Citing Minnesota Statute § 336.1-306, Caco also moves for judgment on the pleadings claiming that Cortec waived or discharged all claims against Caco under the UCC. Section 336.1-306 provides, "[a] claim or right arising out of an alleged breach may be discharged in whole or in part without consideration by agreement of the aggrieved party in an authenticated record." Minn. Stat. § 336.1-306. Cortec's claims allegedly arose out of the late delivery of the Perforator and the Perforator's defective performance. In November 2017, Innoplast allegedly attempted, but was unable, to cure the Perforator's defects. Thereafter, the argument goes, Cortec accepted the free delivery of two machines in an authenticated record, *i.e.*, the 2017 email exchange, signed electronically. *See* Minn. Stat. § 325L.07 ("If a law requires a signature, an electronic signature satisfies the law."); *SuperValu, Inc. v. Quality Farms, Inc.*, No. 04-CV-3569 (DWF/SRN), 2005 WL 2475751, at *6 (D. Minn. Oct. 6, 2005) (applying Minn. Stat. § 325L.07 in the context of the Minnesota UCC). According to Caco,

---

[1] Given the Court's ruling on this initial issue, the Court declines to address Cortec's alternative arguments that the exchange was not a settlement agreement because the defects—or at least some of them—had not yet occurred, nor had the defendants been given an opportunity to cure. [ECF No. 47 at 10–11.]

Cortec accepted the free delivery in exchange for resolution of all claims against Caco, rendering the claims waived under this provision of the UCC. For the reasons set forth above, Caco has failed to show that the email exchange clearly evidences Cortec's intent to discharge its claim for the Perforator's defective performance. Thus, Caco's motion for judgment on the pleadings under the UCC waiver theory is denied as well.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Defendant Caco Plastics' Motion for Judgment on the Pleadings is DENIED.

Dated: January 14, 2020					BY THE COURT:

						s/Nancy E. Brasel
						Nancy E. Brasel
						United States District Judge